# EXHIBIT 6

```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF TEXAS
                           WACO DIVISION

WSOU INVESTMENTS LLC            *    December 10, 2020
                                *
VS.                             *    CIVIL ACTION NOS.
                                *
DELL TECHNOLOGIES INC. ET AL    *    W-20-CV-473 thru 482, 485, 486

              BEFORE THE HONORABLE ALAN D ALBRIGHT
                 TELEPHONIC SCHEDULING CONFERENCE

APPEARANCES:

For the Plaintiff:      James L. Etheridge, Esq.
                        Brett Aaron Mangrum, Esq.
                        Brian Matthew Koide, Esq.
                        Jeffrey Huang, Esq.
                        Ryan Scott Loveless, Esq.
                        Etheridge Law Group, PLLC
                        2600 E. Southlake Blvd., Suite 120-324
                        Southlake, TX 76092

                        Mark D. Siegmund, Esq.
                        Law Firm of Walt Fair, PLLC
                        1508 N. Valley Mills Drive
                        Waco, TX 76710

For the Defendants:     Barry K. Shelton, Esq.
                        Shelton Coburn LLP
                        311 RR 620 S, Suite 205
                        Austin, TX 78734-4775

                        Benjamin Hershkowitz, Esq.
                        Brian Rosenthal, Esq.
                        Gibson, Dunn & Crutcher LLP
                        200 Park Ave.
                        New York, NY 10166

                        Jaysen S. Chung, Esq.
                        Gibson Dunn & Crutcher LLP
                        555 Mission Street, Suite 3000
                        San Francisco, CA 94105
```

```
          1   Court Reporter:         Kristie M. Davis, CRR, RMR
                                      PO Box 20994
          2                           Waco, Texas 76702-0994
                                      (254) 340-6114
          3

          4        Proceedings recorded by mechanical stenography, transcript
12:58     5   produced by computer-aided transcription.
01:31     6
          7
          8
          9
         10
         11
         12
         13
         14
         15
         16
         17
         18
         19
         20
         21
         22
         23
         24
         25
```

```
09:28   1              (December 10, 2020, 10:01 a.m.)
10:01   2              DEPUTY CLERK:  Court calls Waco Case 20-CV-473, 474, 475,
10:01   3    476, 477, 478, 479, 480, 481, 482, 485 and 486, WSOU
10:02   4    Investments LLC versus Dell Technologies Inc., et al for a
10:02   5    telephonic discovery hearing.
10:02   6              THE COURT:  If I could hear announcements from counsel,
10:02   7    please, starting with the plaintiff.
10:02   8              MR. SIEGMUND:  Good morning, Your Honor.  This is Mark
10:02   9    Siegmund for plaintiff WSOU Investments LLC, and with me this
10:02  10    morning I have Mr. Jim Etheridge, Ryan Loveless, Mr. Brian
10:02  11    Koide, Jeff Huang and Brett Mangrum, and myself and some of the
10:02  12    other individuals I just listed will be speaking depending on
10:02  13    what the Court needs.
10:02  14              THE COURT:  Okay.  And for defendants?
10:02  15              MR. SHELTON:  Good morning, Your Honor.  This is Barry
10:02  16    Shelton of Shelton Coburn LLP.  We have four client
10:02  17    representatives today, Tom Brown and Ann-Marie Dinius for Dell
10:02  18    and Danielle Coleman and Daniel Lin for VMware, and from the
10:02  19    firm of Gibson, Dunn & Crutcher Brian Rosenthal who will be
10:03  20    arguing this morning for defendants, Ben Hershkowitz and Jaysen
10:03  21    Chung.
10:03  22              THE COURT:  Good morning all.  Good morning to any client
10:03  23    representatives who have taken the time to attend and with my
10:03  24    appreciation for you doing so.
10:03  25              We will start with the issue of the defendants' concerns
```

10:35  1   second.  As those of you who appear in front of me on Zoom
10:35  2   know, I've got three or four iPads going at any one time during
10:35  3   a hearing.  So it takes me a second to catch up here.  I
10:35  4   apologize.
10:35  5           Okay.  Let's turn next to the issue of infringing
10:35  6   products.  And I'm not sure who's going to argue this on behalf
10:35  7   of defendants, but I'm happy to hear from whoever it is.
10:35  8           MR. ROSENTHAL:  It's Brian Rosenthal again, Your Honor.
10:35  9   And if the Court will indulge me, can I just make one comment
10:35 10   about the previous discussion just before we move on?
10:35 11           THE COURT:  You can say whatever you'd like.
10:36 12           MR. ROSENTHAL:  Thank you, Your Honor.  The only thing I
10:36 13   wanted to mention is we don't take issue with the quantity, the
10:36 14   number of pages.  We have very, very specific requests here.
10:36 15   We're not saying they didn't, you know, put in a lot of work.
10:36 16   We're not saying they didn't generate a lot of paper.  It's
10:36 17   just about a couple of limitations that are key limitations of
10:36 18   these patents, and what we're looking for, to be very plain, is
10:36 19   not just some prose where they write some stuff about how our
10:36 20   products work.  We just want to understand for these key
10:36 21   limitations what are they actually accusing.  It is the what.
10:36 22   It's not the why.  What do you identify as being the ratio?
10:36 23   What do you identify as being the mean cause?  What do you
10:36 24   identify as being the group identifier?  So that we know now
10:36 25   where the claim construction issues lie.  That is our request.

```
10:36  1  And to the extent that wasn't clear, I just wanted to make that
10:36  2  clear.
10:36  3       So with respect to the accused products, there are sort of
10:37  4  myriad issues with the identification of accused products in
10:37  5  the infringement contentions.  Let me just articulate what
10:37  6  those are.  For one of the patents, the first one that I talked
10:37  7  about, the '129 patent, there's an issue which is that they
10:37  8  identify two products, OME and OMNM, and they only allege
10:37  9  certain claim elements for the OME product, but for the OMNM
10:37 10  product -- OMNM product, they don't even allege that certain
10:37 11  elements are met by that product.  So we don't believe that
10:37 12  that's a proper identification of an accused product with
10:37 13  respect to the '129 patent.
10:37 14       More generally, this is the second concern that we have,
10:38 15  for many of the patents there's just an identification of broad
10:38 16  category of products or of an exemplary product and then it
10:38 17  says something like products including the end switch or
10:38 18  product including Dell Edge Gateway or something like that.
10:38 19  And because -- there's a twin problem here.  Because they
10:38 20  haven't articulated what the actual infringement theory is,
10:38 21  we're not in a position where we can do what you might
10:38 22  ordinarily do in a case where you articulate an infringement
10:38 23  theory, you articulate a representative product, and then we
10:38 24  can tell based on that which other products have the same
10:38 25  functionality.  We can't do that because we don't know what the
```

10:38  1   functionality is that's being accused.  And then on top of
10:38  2   that, they have this very vague "and other products" sort of
10:38  3   language.  And so we would like to have from them an
10:38  4   identification of at least representative model number
10:39  5   products.  This is all stuff that's available online.  We know
10:39  6   that they've tested certain products because they have
10:39  7   screenshots and say they've done product testing.  We think
10:39  8   that we ought to have from them a specific identification of
10:39  9   model numbers.  That is not to say that they are going to be
10:39  10  for all time bound to only be able to assert the claims against
10:39  11  those model numbers.  If discovery yields information that
10:39  12  there's other products that have the same or similar
10:39  13  functionality, that's a different story, but at this moment in
10:39  14  time we would like to have from them some more specific
10:39  15  identification by model number of the products that they have
10:39  16  identified as allegedly infringing.
10:39  17          THE COURT:  Okie dokie.  Mr. Siegmund, who will be
10:39  18  speaking on behalf of plaintiff?
10:39  19          MR. SIEGMUND:  Jim Etheridge will be on this one, Your
10:40  20  Honor.
10:40  21          THE COURT:  Okay.  Very good.
10:40  22          MR. ETHERIDGE:  Good morning, Your Honor.  I'll just give
10:40  23  you a high level view there.  I think the bottom line here is
10:40  24  that, you know, discovery in a patent infringement suit
10:40  25  includes discovery that relates to the technical operation of

10:40 1 the accused products that includes the identity and technical
10:40 2 operation of products reasonably similar.  I believe in every
10:40 3 claim chart we've identified what we think is the infringing
10:40 4 products, but it certainly isn't a complete full list.  I mean,
10:40 5 we are not -- if we were to say, for example, we think the L100
10:40 6 series infringes because it includes these elements --
10:40 7         THE COURT:  Well, let me -- Mr. Etheridge, let me
10:40 8 interrupt you.  I believe I just heard counsel for the
10:40 9 defendants tell me that you have not even identified a specific
10:40 10 representative product as in not just a line of products but a
10:40 11 specific product.  So is he correct on that?  In other words,
10:41 12 you know, you can say, all Sony TVs, but Sony TVs operate
10:41 13 differently, and if you -- I think at a minimum you ought to
10:41 14 have to say this Sony TV actually has the infringing circuitry
10:41 15 in it so that the defendant has an idea of the specific
10:41 16 circuitry that you're accusing.  So for each of the claims that
10:41 17 you are currently asserting, have you identified a specific
10:41 18 product?
10:41 19         MR. ETHERIDGE:  Yes.  I believe we have.  And even in the
10:41 20 example he just gave that the Dell OME, we point out in the PIC
10:41 21 that the Dell OME can be integrated with open management
10:41 22 network manager, which is OMNM, to view the networking
10:41 23 information.  So they're clearly on notice of what we're
10:41 24 talking about, and we've named an exemplary product or an
10:41 25 exemplary means to get there.  Once the discovery is produced,

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
| 10:41 | 1  | then, sure.  There'll be more details.  Maybe products will be         |
| 10:42 | 2  | excluded, additional products added, but what I don't want to          |
| 10:42 | 3  | see happen here, and I've seen defendants try to do this               |
| 10:42 | 4  | before, is by forcing you to name a particular product                 |
| 10:42 | 5  | immediately at the beginning, they try to limit all discovery          |
| 10:42 | 6  | to that product only.                                                  |
| 10:42 | 7  | THE COURT:  Well, let me make sure you understand.  That               |
| 10:42 | 8  | has never happened in my court successfully at least.  So, you         |
| 10:42 | 9  | know, I have a very -- as everyone -- well, most of you who            |
| 10:42 | 10 | have been on this call know, I have a very expansive view              |
| 10:42 | 11 | towards discovery.  Let me make clear that if when you come to         |
| 10:42 | 12 | me you can articulate to me why you need some -- if the                |
| 10:42 | 13 | defendant doesn't want to give it, why you are entitled to it.         |
| 10:42 | 14 | You're almost always going to be successful.  If the defendant         |
| 10:42 | 15 | comes to me and says, we need this discovery from the plaintiff        |
| 10:42 | 16 | and they can explain why they need it, they're going to be             |
| 10:42 | 17 | successful.  So -- but that being said -- so I don't want the          |
| 10:43 | 18 | plaintiffs to be concerned that the infringement contentions           |
| 10:43 | 19 | can be successfully used against the plaintiff for -- to deny          |
| 10:43 | 20 | discovery.  And this is -- these are initial infringement              |
| 10:43 | 21 | contentions.  They are initial invalidity contentions.  Both           |
| 10:43 | 22 | are going to get modified after the Markman.  I know how all           |
| 10:43 | 23 | this stuff works generally speaking.  And so my concern at the         |
| 10:43 | 24 | moment where we're at procedurally is I want to make sure that         |
| 10:43 | 25 | the plaintiffs have -- the plaintiff has articulated with              |

```
10:43  1   sufficient specificity products so that the defendants as they
10:43  2   are preparing for the Markman and preparing to move forward
10:43  3   after that can say that the plaintiffs must mean this in terms
10:44  4   of the allegations of infringement because we can tell
10:44  5   specifically how the functionality of this specific product
10:44  6   works.  And so I think it's fair for them to have that.
10:44  7          Now, again I'll ask you.  Have you provided sufficient --
10:44  8   have you provided, in your opinion, products with specificity
10:44  9   that the defendants can rely on for each claim that you have
10:44 10   said that you want to pursue?
10:44 11          MR. ETHERIDGE:  Yes.  I believe we've identified at least
10:44 12   a specific product.  In many instances we've identified
10:44 13   multiple products or a line of products.  And the reason I
10:44 14   raised my concern is because in each of the columns you will
10:44 15   see that Dell has said that, you know, WSOU's only identified
10:44 16   the smart fabric operating system, and at a minimum they should
10:44 17   identify the -- and the discovery should be limited to the
10:44 18   model number.  So I'm happy to go through each of our -- let
10:45 19   each of my guys tell you what product has been accused in every
10:45 20   one of the products, but they have all been -- they have all
10:45 21   been named.  I don't think it's necessary at this point to give
10:45 22   a serial number or a particular model number because only Dell
10:45 23   knows how they've configured each of those, but I think they're
10:45 24   definitely on notice and at least the product or line of
10:45 25   products have been named in every instance.
```

| | | |
|---|---|---|
| 10:45 | 1 | THE COURT: Well, here's what I'm going to do on this, and |
| 10:45 | 2 | then I'll hear from the defense counsel if they need more than |
| 10:45 | 3 | this, and they may. But, you know, what I'm -- what I want you |
| 10:45 | 4 | all to do is get back together after the call, have the |
| 10:45 | 5 | defendants go through and provide you with a specific list -- |
| 10:45 | 6 | if they haven't. I think they probably have -- of any claim |
| 10:45 | 7 | that you've asserted, any -- I was going to say independent. |
| 10:45 | 8 | It could be independent or dependent, but any individual claim |
| 10:45 | 9 | that they've asserted and verify that you have provided them |
| 10:46 | 10 | with specific products that they can identify. And if there |
| 10:46 | 11 | are any that -- if there are any claims after that meet and |
| 10:46 | 12 | confer that the defendants feel that you have not done an |
| 10:46 | 13 | adequate job on after you discuss it, they can send you a list |
| 10:46 | 14 | of the claim -- the patent and the claim numbers they think you |
| 10:46 | 15 | are deficient on. You can fill in a copy. Just -- I mean, |
| 10:46 | 16 | this is very short. This is like a memo. You can identify on |
| 10:46 | 17 | that document what you have identified as a representative |
| 10:46 | 18 | product. You all send me that document. I'll review it. And |
| 10:46 | 19 | if I think that the products that have been identified by the |
| 10:46 | 20 | plaintiff are insufficient, then I'll order additional -- I'll |
| 10:47 | 21 | order you to do additional work. |
| 10:47 | 22 | So let me go back to the defendant for a second. Beyond |
| 10:47 | 23 | that, what else did you want me to do? |
| 10:47 | 24 | MR. ROSENTHAL: Your Honor, I think that's a good |
| 10:47 | 25 | solution. I just wanted to respond just to the notion that |

```
10:47  1   indeed specific products have been identified for every patent.
10:47  2   We don't believe that to be the case.  And just as an example,
10:47  3   it's in the joint submission.  You know, the '536 patent
10:47  4   they've just identified Dell power connectivity 500 series
10:47  5   which is a number of switches.
10:47  6          For the '435 patent they've identified power switch N
10:47  7   series switches which is a number of switches.
10:47  8          THE COURT:  Well, let me interrupt you and say, here's the
10:47  9   way I see that is if the plaintiff's position is that all of
10:47 10   those series of switches infringe that claim term, that's
10:48 11   adequate.  If -- and that's why I want you guys to get back and
10:48 12   meet and confer on this since I've spoken to you, and I'm happy
10:48 13   to keep working through this with you.  I'm happy to be as
10:48 14   involved as you need me to be, but if the plaintiff's
10:48 15   position -- if the plaintiff has said, this series of Dell
10:48 16   products infringe, then I think it's fair for the -- for Dell
10:48 17   or whichever defendant to believe that for that claim that all
10:48 18   the series does.  If that's not what the plaintiff is meaning
10:48 19   to say, if they've tested a specific representative product and
10:48 20   that's the one they're sure does, well, then they can narrow it
10:48 21   down to that.  So I'm just trying to get for the defendant as
10:48 22   much specificity as possible with respect to a product, a
10:48 23   specific product that the plaintiff believes infringes a
10:49 24   specific -- each specific claim.  So hopefully that helps you
10:49 25   out on that.
```

```
10:49   1         MR. ROSENTHAL:  It does, Your Honor.  That's great
10:49   2   guidance and we will work with plaintiff to try to do that.
10:49   3   And that is what we are looking for.  You know, for instance,
10:49   4   there are -- with respect to all of the allegations against
10:49   5   VMware, for all of those there's no reference to any particular
10:49   6   version of the software.  If they have tested or examined all
10:49   7   of the versions and assert infringement of all of the versions,
10:49   8   then we'd like to know that.  If they're only asserting
10:49   9   presently infringement against one of the versions based on
10:49   10  what they've looked at, we'd like to know that.  That does have
10:49   11  an impact on our analysis of what's actually at issue because
10:49   12  we're sort of -- you know, we're guessing in the dark about
10:49   13  what the infringement contention is.  It's important for us to
10:49   14  at least have something to grab onto to say, okay.  This is
10:49   15  what the product is.  So with that in mind, we will proceed as
10:50   16  Your Honor ordered, and hopefully we'll be able to resolve the
10:50   17  issue, and if not, we will send that memo in.
10:50   18        THE COURT:  Okay.  And one more thing -- but let me state
10:50   19  one more thing.  Generally speaking, I know how the world
10:50   20  works.  I know -- I've understood what you all have argued this
10:50   21  morning, but just so you know, my belief is that in the
10:50   22  infringement contentions I know in the real world they are, but
10:50   23  as a legal matter, the legal contentions are not part -- the
10:50   24  infringement contentions, invalidity contentions are not part
10:50   25  of the Markman process.  So that -- I just want everyone to
```

```
10:50   1    understand that from my perspective, and it may be right or
10:50   2    wrong, but, in other words, the need for infringement
10:50   3    contentions or invalidity contentions to assist someone in
10:50   4    coming up with what they believe a Markman claim term should
10:51   5    mean, I don't think -- I disagree with that.  I think I'm
10:51   6    supposed to be doing the claim construction as a matter of law
10:51   7    based on what the claim says and the intrinsic evidence which
10:51   8    is agnostic to whatever the products are that are out there for
10:51   9    the infringement contentions.  So I just wanted everyone to
10:51   10   understand that's my philosophy as we move forward.  That being
10:51   11   said, again, I think it is absolutely fair for the defendants
10:51   12   to have a clear understanding through a product being
10:51   13   identified as to what the plaintiff's position is with respect
10:51   14   to infringement of the claims they want to assert.  So
10:51   15   hopefully -- I just -- I wanted that on record so you all had
10:51   16   my philosophy on how we do things if it's helpful, and I don't
10:51   17   know if it is or not.
10:51   18        So is there anything else -- since it was the defendants
10:52   19   who asked for this hearing, is there anything else the
10:52   20   defendants would like me to take up at this time?
10:52   21        MR. ROSENTHAL:  Speaking for myself, Your Honor -- this is
10:52   22   Brian Rosenthal -- no, other than to mention as I said at the
10:52   23   outset of this call, many of the issues that we raised in our
10:52   24   letters, in our joint chart and in our discussion today overlap
10:52   25   substantially with some of what we believe to be fatal issues
```

```
10:52   1   with the allegations themselves in the complaint.  We have
10:52   2   completed our briefing on the motion to dismiss and requested a
10:52   3   hearing, and we believe that if we can get a hearing at Your
10:52   4   Honor's convenience, of course, we believe that a number of
10:52   5   these issues will be fleshed out in significant detail and we
10:52   6   think resolved.  So I just wanted to mention that there is a
10:52   7   great deal of overlap.
10:52   8            THE COURT:  Understood.  But I appreciate that.  That's
10:53   9   helpful.  So what I will do -- what I will task you all to do
10:53  10   is to -- we definitely should have the hearing on that motion
10:53  11   to dismiss before the end of the year before Christmas.
10:53  12   Depending on what the Circuit does, I may be in trial for two
10:53  13   weeks in January or I might not.  So but we should -- we should
10:53  14   plan on me being in trial.  Just so you know my schedule, even
10:53  15   though you probably don't care, I've got a week of Markmans.  I
10:53  16   think we have 15 Markmans set the first week of January, and
10:53  17   then I have two jury trials that will take up the rest of the
10:53  18   month, but I want to get this done before then.  So if the
10:53  19   briefing is finished, then work with my clerks to get a Zoom
10:53  20   call or -- I don't care.  I think my court reporter prefers
10:53  21   Zoom.  She can hear better.  But let's set up a Zoom or
10:54  22   telephonic conference before we all get away for Christmas, and
10:54  23   you just let my clerks know when that would work for you guys.
10:54  24            Anything else from the defendants?
10:54  25            MR. ROSENTHAL:  No.  Thank you, Your Honor.
```

10:54 1        THE COURT:  Anything else, Mr. Siegmund, for the
10:54 2   plaintiff?
10:54 3        MR. SIEGMUND:  No, sir.  That's all.  Thank you very much
10:54 4   Judge.
10:54 5        THE COURT:  Okay.  And by the way, if I haven't said this
10:54 6   before, as I try to make clear, I think it's my role to stay
10:54 7   involved in these kind of disputes.  I get angry only -- I
10:54 8   don't know that I get angry about anything, but I'm unhappy
10:54 9   only if people aren't continuing to involve me and letting
10:54 10  these things fester.  So I very much appreciate you all
10:54 11  bringing this to my attention quickly.  We'll get these issues
10:54 12  resolved quickly, and we'll get the motion to dismiss resolved
10:54 13  by the end of the year.
10:54 14       But it's unlikely I will see most or any of you before the
10:55 15  end of the year, given our current situation, in person.  So
10:55 16  you all have a wonderful month and Christmas if I don't talk to
10:55 17  you again before our hearing.  So have a good day.  Take care.
10:55 18       (Hearing adjourned at 10:55 a.m.)
      19
      20
      21
      22
      23
      24
      25

1  UNITED STATES DISTRICT COURT )
2  WESTERN DISTRICT OF TEXAS    )
3
4       I, Kristie M. Davis, Official Court Reporter for the
5  United States District Court, Western District of Texas, do
6  certify that the foregoing is a correct transcript from the
7  record of proceedings in the above-entitled matter.
8       I certify that the transcript fees and format comply with
9  those prescribed by the Court and Judicial Conference of the
10 United States.
11      Certified to by me this 11th day of December 2020.
12
13                              */s/ Kristie M. Davis*
                                KRISTIE M. DAVIS
                                Official Court Reporter
14                              800 Franklin Avenue
                                Waco, Texas 76701
15                              (254) 340-6114
                                kmdaviscsr@yahoo.com
16
17
18
19
20
21
22
23
24
25